## SHAFFER v. BOWES.

### No. 31.

Municipal Court of Appeals for the District of Columbia.

Jan. 29, 1943.

Leon L. Sclawy, of Washington, D. C., for appellant.

Herman Miller, of Washington, D.C., for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

HOOD, Associate Judge.

Plaintiff below brought action in the Landlord and Tenant Branch for possession of a room in premises 1728 P Street, Northwest, in the District of Columbia, alleging the room was held by defendant as a tenant by sufferance which tenancy had been terminated by a notice to quit.

Plaintiff leased the entire premises on or about June 26, 1942, for the purpose of making her home there and renting other rooms in the house. When plaintiff took possession of the premises, defendant was then in possession of the room in question, and plaintiff requested defendant to move to another room as plaintiff desired possession of that room for her own personal occupancy. Defendant refused to move, notice to quit was given by plaintiff, and the action below followed.

At the trial plaintiff testified she wished this room for her own immediate and personal use and occupancy as a dwelling, that it was best suited to her needs because it

---

3 O'Mally v. Eagan, 43 Wyo. 233, 2 P.2d 1063, 77 A.L.R. 582.

was located near the head of the stairway, was the best room in the house from which to operate the premises, and was the most convenient room for answering the door and telephone downstairs, as well as for keeping order on the premises.

On cross-examination plaintiff admitted that the rent for the room in question is the "lowest in the house" but said that was not the reason she desired it for her own occupancy.

Defendant testified she had occupied the room in question—a large room on the second floor—for three years, had bought furnishings for the room, had a private telephone installed in it, and it was best suited for her purposes; that the room had the lowest rental in the house, which was one reason she did not wish to move, and further it was objectionable to her to move at this time and she did not wish to move to the third floor.

Trial was had without a jury and the trial judge made a finding for the defendant on the ground that "I do not think the plaintiff has proved a case under the Rent Control Act." The District of Columbia Emergency Rent Act,[1] a temporary measure brought about by the national emergency, was enacted "to prevent undue rent increases and any other practices relating to housing accommodations in the District of Columbia which may tend to increase the cost of living or otherwise impede the national-defense program."

The foregoing Act provides for "maximum rent ceilings" and "minimum service standards," and restricts the right of a landlord to recover possession of his property. The pertinent provision, so far as the instant case is concerned, is in Section 5 of the Act providing:

"(b) No action or proceeding to recover possession of housing accommodations shall be maintainable by any landlord against any tenant, notwithstanding that the tenant has no lease or that his lease has expired, so long as the tenant continues to pay the rent to which the landlord is entitled, unless—

\* \* \* \* \*

"(2) The landlord seeks in good faith to recover possession of the property for his immediate and personal use and occupancy as a dwelling."

It is evident the Act did not intend to prevent an owner from occupying his own premises, provided such occupancy is sought in good faith and not for the purpose of evading or defeating the purposes of the Act. In such circumstances, where an owner has several properties available, the choice of which one he shall occupy is for him.[2]

We think the plaintiff below made out a good case within the meaning of the Act. There is no evidence that she was actuated by caprice or malice, but on the contrary, the evidence discloses a reasonable basis for her demand for possession of this particular room. That the room had the "lowest rent" in the house may have added to her desire to have it for her own occupancy, but we do not think the trial court was justified in concluding that this factor was her chief reason.

By designation of counsel for appellant there was included in the record a brief in behalf of plaintiff and a letter of defendant in reply thereto, filed with the trial judge while he had the case under advisement. Briefs and documents of that nature are properly no part of the record and their inclusion tends to create confusion as well as add to the labor and cost of preparing the record. Counsel should avoid any such practice.

Reversed with instructions to enter judgment for plaintiff.

Reversed.

CAYTON, Associate Judge (concurring in result).

I concur in the result, but I cannot subscribe to the edict that "where an owner has several properties available, the choice of which one he shall occupy is for him." I frankly regard this as dangerous language. I fully agree that in the special circumstances of this case plaintiff ought not to be deprived of possession of the room she seeks. I am satisfied the evidence supports her claim and removes the situation from the class of tenancies "frozen" by the Rent Act. Considerations of morals,

[1] Public Law 327—77th Congress, approved December 2, 1941, amended September 26, 1942, Public Law 715—77th Congress, D.C.Code 1940, § 45-1601 et seq., 56 Stat. 759.

[2] Mess v. Mosteller, 54 App.D.C. 77, 294 F. 1008, decided under the Ball Rent Act, 41 Stat. 297.

safety, fire prevention and the general benefits of direct personal management amply justify the position that the operator of a rooming house should have possession of a room so situated that she can give the entire house her active personal supervision.

But that does not justify the flat ruling that an owner who has several properties available has the choice of which one he shall occupy. If this language were taken at its face value it would constitute an invitation to any landlord (of rooming house or other property) who happened to own more than one property, to point his finger at one particular house or room or apartment and say, "I want it" and "the choice is mine" and the courts would have to stand idly by, impotent to protect the hapless tenant; and without inquiring into the special circumstances, nod in futile acquiescence "that the choice is with the owner". In my opinion it is not nearly so simple as that. Various considerations must be weighed in claims of this kind: the good faith of the landlord; the location, size and character of the properties available to him; the rental values of the properties from among which he seeks to make the choice; the furnishings and facilities in each; the length of time occupied and by whom; the accessibility of each property to transportation facilities; the distance from the places of employment of both landlord and tenant; the special circumstances that prompt him to demand possession of the particular property, and any other material information that will throw light upon the justice of the plaintiff's claim. Only in that manner can the courts decide whether the case should be judicially labelled an exception to the strict provisions of the Rent Act by which tenants are assured that they will not be ousted from their homes unless the suing landlord clearly establishes his claim.

I am, of course, aware that the language of which I complain was used some twenty years ago by Mr. Justice Van Orsdel, speaking for the then three-judge Court of Appeals of the District of Columbia, in Mess v. Mosteller, cited in the opinion of the majority. (It is perhaps significant that one of the three judges merely concurred.) But it must be remembered that those words were used in deciding the claim of a landlord who required the property for the occupancy of himself and wife, both of whom were over seventy years of age and who were living in Chevy Chase, Maryland at a remote distance from the car-line and in quarters inadequate to their needs in going back and forth to the city of Washington where the plaintiff conducted his business. The Court itself was moved to point out that "it is difficult to conceive of a stronger case than the one at bar establishing the necessity of possession of property for the owner's use and occupancy" [54 App. D.C. 77, 294 F. 1008, 1009].

Nor should we overlook that the language was written in connection with the Ball Rent Act more than five years after the Armistice of 1918, at a time when the emergency contemplated by said act had passed and within a few weeks of the time when it was to be invalidated by the Supreme Court on that very ground.[1] Moreover, the act by its own terms [2]was to expire less than a month after the Supreme Court decision, and less than four months after the Mess v. Mosteller opinion was rendered. Therefore, I cannot agree that it is compelling authority here, for the situation today is vastly different. Far from having passed, the emergency is daily becoming more acute. It is increasingly evident that a critical housing situation exists in the District of Columbia and that the war effort is creating still higher demands upon the housing facilities here, and is giving rise to every tragic variety of hardship. It seems to me that there is nothing in our present Emergency Rent Act and certainly nothing in the facts that we judicially know, that justifies us in saying that the choice between two or more properties which a landlord owns is with him alone. Naturally, the initial choice is with the landlord, for it is he who initiates the proceedings. But the ultimate choice is with the courts, and to be exercised only after careful scrutiny of all the circumstances, to determine whether the landlord is justified in choosing from among his properties, and demanding that a tenant yield up possession of a particular room or house or other dwelling unit.

For these reasons, while I agree with the result announced in the majority opinion, I decline to accept the views expressed on this point as either safe or proper precedents for the future.

---

[1] Chastleton Corp. v. Sinclair, 264 U. S. 543, 44 S.Ct. 405, 68 L.Ed. 841, decided April 21, 1924.

[2] Act of May 22, 1922, chap. 197, 42 Stat. 543.