## AYANO OGITANI *v.* SAM MUN.

## No. 2560.

ARGUED APRIL 13, 17, 1944.                    DECIDED APRIL 24, 1944.

KEMP, C. J., PETERS AND LE BARON, JJ.

712

OPINION OF THE COURT BY KEMP, C. J.

This is an appeal by writ of error from a judgment for possession of residential property situated at 2941 Winam street, Honolulu, in an action brought by the defendant in error (herein referred to as plaintiff) against the plaintiff in error (herein referred to as defendant). The error assigned requires us to determine the sole question of whether the evidence is sufficient to sustain the finding of good faith on the part of the plaintiff in demanding possession of her property, as required by ordinance number 941 of the City and County of Honolulu. The notice which plaintiff gave defendant to vacate was by letter dated August 28, 1943, addressed to the defendant, and required him to vacate at the expiration of his rental period, on October 7, 1943. In stating her reason for demanding possession of her property the plaintiff said: "The Territorial Government has taken over the house in which we had been living for many years, and we are now compelled to recover possession of the premises you occupy for our own immediate and personal use and occupancy as a dwelling." The uncontroverted evidence is that the government in a condemnation proceeding took possession of plaintiff's former home July 18, 1943.

The defendant failed to comply with the notice to va-

cate and this action was filed October 14, 1943, one week after the date fixed by the notice for the defendant to vacate. It was stipulated that plaintiff has refused to accept rent since she gave notice. She did not seek to evict defendant for nonpayment of rent. Her sole ground for eviction is that she requires possession for her immediate and personal use and occupancy as a dwelling.

The house taken over by the government and in which she had lived for many years was a combination store and residence, having besides a store and kitchen on the ground floor a second story consisting of five bedrooms, a lanai, and a storeroom, making seven units in the second story. She had living with her in the house which the government took one married son, his wife and child, and two unmarried sons, Tadasu aged twenty-five years, and Kango aged eighteen years.

The plaintiff also owns five other residences situated on leased land in Kalihi, Honolulu, all occupied by tenants. She also owns the house here involved and three others in Kapahulu, all of which were occupied by tenants at the time she gave notice to defendant.

When the plaintiff and those members of her family living with her were dispossessed by the government they all moved in with two of the plaintiff's married sons then living in houses owned by the plaintiff.

It appears from plaintiff's evidence that she wanted two of her houses vacated and that she gave notice to the defendant and to the tenant who rented her houses situated at 810 Kapahulu road; that the house at 810 Kapahulu road was promptly vacated but she did not move in. Instead, she let her married son, who had made his home with her, have it. She gave several reasons for not availing herself of that house. One was that it was "too crowded; too small," and another was that she hated to see her children (meaning the children of two of her sons)

fighting, so in order to separate the children she let her son who had formerly lived with her have it. The evidence as to the relative size of the two houses is conflicting.

The plaintiff testifying in her own behalf was asked as to whether she intends to occupy the house in suit alone, to which she replied, "No. I expect to move in with my son Tadasu." She did not mention her minor son Kango as one to occupy the house with her.

Section 9 of ordinance number 941 of the City and County of Honolulu provides *inter alia* that "It shall be unlawful for any person to institute any action or proceeding to recover possession of housing accommodations so long as the tenant continues to pay rent to which the landlord is entitled under this ordinance, unless: * * *

"2. The landlord seeks in good faith to recover possession of the property for his immediate and personal use and occupancy as a dwelling * * * ."

The circuit judge before whom the cause was tried, jury waived, on defendant's appeal from a decision in favor of plaintiff in the district court of Honolulu, found from the evidence which we have summarized, among other things, "that plaintiff seeks in good faith to recover possession of said house and premises for her immediate and personal use and occupancy as a dwelling * * * ."

The defendant contends that the evidence is insufficient to sustain that finding.

Ordinance number 941 became effective December 13, 1941. The District of Columbia Emergency Rent Act, passed by the 77th Congress, became effective December 2, 1941. Although the Act of Congress preceded our ordinance by only eleven days, the good faith provision of our ordinance must have been taken from the Act of Congress for they are couched in exactly the same words.

Plaintiff relies upon cases construing the District of Columbia Act.

The good faith section of the District of Columbia Act was invoked in *Colwell* v. *Stonebraker*, 31 A. (2d) 866, 867, and in *Gould* v. *Butler*, 31 A. (2d) 867. In the *Stonebraker* case the plaintiff sought possession of one of sixty-three housing units in an apartment building owned by her and which her husband managed. The plaintiff testified that she and her husband were living at Edgewater, Maryland, thirty-five miles from Washington; that gas rationing made it impossible for her husband, who managed her apartment building, to commute from their home to his office and for that reason they desired to occupy an apartment in her building and that she chose the particular apartment because of its location and exposure and because she felt the occupant was the least desirable tenant in that tier. There were no vacant apartments in the building. The defendant testified that the apartment was occupied by his estranged wife and that in August plaintiff's manager-husband asked him to have the apartment vacated, giving as his reason for the request that his wife's conduct as an occupant was objectionable; that nothing was then said about wanting the apartment for occupancy by the owner. The request for possession not having been complied with, in September plaintiff notified defendant to vacate stating in the notice that she wanted the apartment for her own occupancy and that plaintiff's husband then explained that the owner had to give that as her reason to get the occupant out of possession. The defendant's evidence as to the statements made to him does not appear to have been controverted.

In affirming a judgment giving the landlord possession, the court of appeals said:

"The District of Columbia Emergency Rent Control Act, excepts from its interdiction of possessory actions by

a landlord the case of an owner who in good faith seeks recovery of his own property for immediate and personal use and occupancy as a dwelling. This provision was considered under comparable circumstances in our opinion in the case of Shaffer v. Bowes, D. C. Mun. App., 31 A. 2d 690. We held that the Act 'did not intend to prevent an owner from occupying his own premises, provided such occupancy is sought in good faith and not for the purpose of evading or defeating the purposes of the Act. In such circumstances, where an owner has several properties available, the choice of which one he shall occupy is for him.'

"That the rent of the selected premises is low when contrasted with that of similar housing units, the availability of other quarters, an objection to or even ill-will toward a particular tenant, are matters properly admitted in evidence as bearing upon the good faith of one seeking possession under Section 5 of the Rent Control Act. But no one, or all in combination, necessarily constitute bad faith. They are items of evidence, to be considered by the court with the other evidence in the case."

The facts in *Gould* v. *Butler* were that Gould was holding over after the expiration of a lease. Butler was living on a farm which he owned jointly with a brother. Under an arrangement with his brother they occupied the farm alternately for two-year periods. Butler's period of occupancy would expire at the end of 1942. His family consisted of himself, his wife and a young daughter. Both his wife and daughter were in ill-health. The farmhouse was not well-heated. He could not obtain labor to cut wood for heating. He wrote to Gould in June, 1942, stating that he wished to repossess his property when the lease expired on August 1. Defendant failed to vacate and there followed a thirty days' notice to quit, and on October 1, 1942, action was commenced. A judgment for

plaintiff and granting a stay of execution to December 15, 1942, was appealed by defendant. In affirming the judgment the court said:

"Defendant contends that the Rent Control Law 'should be applied, not in view of the controversy of the parties, but rather in the light of the evils the act was designed to remedy'. Naturally we cannot undertake to decide abstract propositions, but must direct our attention to the case as tried and decided. We do not forget that the Rent Control Law was enacted to prevent the injustices which would be expected to flow from the acutely overcrowded conditions of a war-time Capital; or that it is legislation of a broad social nature and should be reasonably construed so as to accomplish its purposes. One of those purposes is to 'freeze' existing tenancies and prevent the ouster of tenants in possession of dwelling properties. Congress, however, made an exception (among certain others) in a situation where—'The landlord seeks in good faith to recover possession of the property for his immediate and personal use and occupancy as a dwelling'.

"We agree that in testing plaintiffs' right to possession under this clause, the spirit as well as the letter of the Act should be considered, and that pretext and flimsy showings should not form the basis for ousting tenants and adding to the acute housing problem in the District. But that is not the situation here. These plaintiffs have no other place to go. They have lost (for two years at least) the right to occupy their farm property. It is but natural that they should turn to their own home here. Congress made an exception in cases of this kind, and we think the trial judge was correct in recognizing the case as properly within the excepted class. Shaffer v. Bowes, D. C. Mun. App., 31 A. 2d 690; Colwell v. Stonebraker, D. C. Mun. App., 31 A. 2d 866.

"Defendant next urges that the good faith of a landlord seeking possession is not to be measured by his state of mind but by the circumstances of the case. We agree that in examining the question of good faith all circumstances should be considered which will shed light upon whether a proper case for possession has been established. Among these circumstances, is, we think, the state of mind, intent and purpose of the suing landlord as reflected in the evidence. For all of these elements are bound up with the question of good faith, and may help the court decide whether the landlord is merely attempting to juggle his property for profit, or legitimately requires it to live in." All of the foregoing might very well be paraphrased in discussing the questions raised in this case with the exception of the one raised by the fact that plaintiff wanted and demanded possession of two of her houses.

The particular facts which the defendant stresses as showing a lack of good faith were developed on cross examination of plaintiff. She, having testified that she wanted the house for her personal use, admitted that she demanded possession of two of her houses occupied by different tenants and that she stated in both demands that she wanted possession for her personal use and occupancy, and that one of them promptly complied with her demand and vacated. She further admitted that she gave that house to one of her married sons and his family instead of occupying it herself. It does not appear whether both notices were given at the same time or, if given at different times, which was first given.

We concede that where an owner has several properties the choice of which one he shall occupy is *prima facie* for himself to decide, but we do not concede that the landlord can select one of his properties for his use and occupancy, pursue that selection, and within six months select

another of his properties and without a showing of good cause for abandoning his first choice assert that he is seeking possession of his second selection in good faith. The choice being *prima facie* his, once he makes his choice, he must abide by it for at least six months in the absence of a showing of good cause for not doing so. The rent control ordinance (§ 9, subpar. 3) provides in part that "where the landlord * * * recovers possession of the property for his personal occupancy as a dwelling, he must continue to presently occupy said premises for a period of at least six months unless granted permission to leave after showing good cause thereof, by the administrator with the consent of the commission." And where it appears that after recovery of possession of the property of his choice he fails to avail himself thereof for his immediate and personal use and occupancy, and prior to the expiration of the six months' period seeks to recover possession of still another property owned by him for his allegedly immediate and personal use and occupancy, his failure to occupy his first selection is certainly material to the issue of good faith in an action for summary possession of the second.

Counsel for plaintiff apparently admitted at the trial that the burden was on the plaintiff to establish good faith. He seemed to think, however, that plaintiff's statement that she wanted the house in question for her use as a dwelling settled that question regardless of whether or not she had theretofore, within six months, selected another of her properties for that purpose. But the term "good faith" is qualified by the purpose for which possession of property may be recovered, *viz.*, "for his immediate and personal use and occupancy as a dwelling." Certainly, under the ordinance, she is not entitled to select within a six months' period two separate and distinct

properties for her "immediate and personal use and occupancy as a dwelling."

If the plaintiff selected the house in question for her immediate and personal use and occupancy as a dwelling at a time when she had the right to do so, she should.have it. That is her natural right expressly reserved to her by the terms of the rent control ordinance. The record fails to disclose, however, upon what notice to quit in point of time this action is predicated. And to the extent of that deficiency the evidence is insufficient to sustain the decision. If a new trial is had, evidence as to the time of the notice given by plaintiff to her tenant at 810 Kapahulu street can no doubt be produced and her right to proceed in this case will be determined thereby.

The judgment is reversed and a new trial ordered.

*A. K. Trask* (also on the briefs) for plaintiff in error.

*R. T. Yamaguchi* (also on the brief) for defendant in error.