ADÉLE SNYDER *v.* JEROME W. RESHENK.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued June 15—decided July 20, 1944.

*George E. Beers,* with whom, on the brief, were *Edward S. Snyder* and *William L. Beers,* for the appellant (plaintiff in error).

*T. Holmes Bracken,* for the appellee (defendant in error).

BROWN, J. The plaintiff, owner of a three-floor tenement house in the defense rental area of New Haven, brought this action of summary process against the defendant as lessee for one month of the apartment on the third floor. Upon the trial of the case before the justice of the peace and a jury, a verdict and judgment were rendered for the defendant. The plaintiff lessor, as plaintiff in error, brought a writ of error to the Court of Common Pleas and that court found no error. The plaintiff then appealed to this court. The question which was vital at the trial before the justice and in the Court of Common Pleas, and is fundamental upon this appeal, concerns the meaning of § 6 of the regulation under the federal Emergency Price Control Act of 1942 (56 Stat. at Large, Chap. 26; 50 U. S. C. App. § 901 et seq. [Sup. 1941-1943]), which, when this action was brought, read as follows: ". . . no tenant shall be removed . . . by action to evict or to recover possession . . . unless: (6) . . . The landlord . . . seeks in good faith to recover possession of such accommodations for immediate use and occupancy as a dwelling for himself."

8 Fed. Reg. 7326. The question is presented by the bill of exceptions relating to rulings on evidence, the charge and refusal to charge as requested.

In his charge, the justice explained to the jury that the federal act and regulation applied and that one of the exceptions to the regulation concerning the removal of a tenant was that above quoted, and further charged in explanation of it: "The phrase, 'in good faith,' as used in this exception cannot be given a general definition since it depends upon the particular circumstances of each case. This must be determined by you from the evidence, and such evidence may consist of facts showing the landlord's general family and home situation, her need or lack of need of housing accommodations under existing circumstances, statements made by her to others concerning her reasons for wishing to evict the tenant, offers made to others to rent the premises of which she seeks possession, a willingness, or unwillingness, on her part to offer the tenant other housing accommodations which are under her control, and a multitude of other factors which may properly be taken into consideration in determining the question of her good faith."

The plaintiff contends that this charge was erroneous because it permitted the jury, in determining whether she was seeking "in good faith" to recover possession of the tenement for her own immediate use and occupancy as a dwelling, to consider circumstances other than her actual intent to move into the premises and use them as a home, claiming that such circumstances are irrelevant. In short, the plaintiff's claim is as stated in her brief that "the phrase 'in good faith' refers simply to the reality of the landlord's desire . . . to recover possession . . . really for immediate use and occupancy as a dwelling for himself," and that to give consideration to any other element such as his

reason, motive, or the intended effect upon the tenant "is to depart from both the spirit of the act and its language," that is, to misconstrue the regulation adopted pursuant to it. Even though the construction which she claims be correct, on this record it does not follow that the charge was erroneous on the ground stated.

By the plaintiff's claims of proof, it appears: As a result of complaints made by the defendant to the Rent Control Administration, the $35 per month rental which the defendant had agreed to pay was ordered reduced to $26, an amount later changed to $28; the mortgagee of the property was exacting increased payments; the plaintiff's business income had greatly declined; and for these reasons she found it necessary to move from the second-floor tenement which she and her family had been occupying to the third-floor tenement occupied by the defendant in order to permit her to rent the second-floor tenement and so effect a saving of $28 per month. The defendant's claims of proof were: On May 3, 1943, the Rent Control Board ordered the plaintiff to pay back to the defendant the excess rent of $9 per month for eight months which she had overcharged him; the plaintiff failed to comply with this order and the defendant sued her under the act to recover the overcharge plus penalties; until this repayment was ordered, the plaintiff had never requested the defendant to move or suggested to him that she would like with her family to occupy the third-floor tenement; she never offered to rent the second-floor tenement to the defendant or made any effort to rent it to anyone else; the third-floor tenement is considerably smaller than the one on the second floor; the plaintiff's family consisted of seven people and it would not be practicable for them to occupy the third-floor tenement, nor could they rea-

sonably do so; the plaintiff did not in good faith seek possession thereof for her own occupancy; her expressed desire to evict the defendant that she might occupy the tenement herself was merely a scheme for revenge upon him; the summary process action was brought to punish him for bringing the suit against her to recover the amount of rent illegally overcharged; and the plaintiff herself did not desire to occupy the third-floor tenement but brought the action at the instigation of her husband.

A vital issue presented for the jury's determination upon these conflicting claims, as to which the justice was bound to charge, was whether the plaintiff was seeking possession of the third-floor tenement because of the financial necessity of increasing her income and reducing her expense, as she claimed, or whether her purpose was to revenge herself upon the defendant, as claimed by him. That this was an issue which the plaintiff was urging upon the jury for its consideration and determination is further evidenced by two of her requests to charge. In one of these, the plaintiff used these words: ". . . the owner of these premises is entitled to recover possession since she honestly intends to occupy said apartment herself in order to save her home. . . ." In another, she included this statement: ". . . if you find from the evidence that the plaintiff has an honest intention of using the accommodations as a dwelling for herself and family, because she finds it a great hardship with her present income to maintain said property, and is obliged to obtain a cheaper rental, . . . the present intention to occupy said apartment herself to save her home is sufficient proof of her good faith." The scope of these requests is not restricted to "the reality of the landlord's desire . . . to recover possession" but is specifically extended to the purpose and the reason for

this desire, and the requests suggest a purpose and a reason radically different from those which the defendant claimed to have proved. The record warranted the charge complained of. For like reason, the error assigned in the court's rulings on evidence and refusal to charge are without merit.

Furthermore, we are satisfied that the narrow construction of the regulation for which the plaintiff contends is not justified. While it is true that the phrase "good faith" is used in somewhat differing senses (see 18 Words & Phrases 475 et seq.), "in common usage, it has a well defined and generally understood meaning, being ordinarily used to describe that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, means being faithful to one's duty or obligation." 35 C. J. S. 488, and cases cited. It has been well defined as meaning "An honest intention to abstain from taking an unconscientious advantage of another, even through the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious." 2 Bouvier's Law Dictionary (3d Rev.), p. 1359. Helpful as definitions are, in the construction of this regulation as in the construction of statutes the principle applies that "the reason and purpose of the legislation as shown by its provisions may well be more significant than technical definitions in determining the meaning of the particular words employed." *Hartford Electric Light Co.* v. *McLaughlin,* 131 Conn. 1, 5, 37 Atl. (2d) 361. In the present instance, not only the provisions of the regulations but those of the act as well are to be considered.

The act under which the regulation is promulgated declares that it is in the interest of the national defense and security and necessary to the effective prose-

cution of the war. The context of the statute in so far as applicable to rents leaves no doubt that a primary purpose is to protect the tenant in defense rental areas, not only against the exaction of excessive rents but also against being forced, without good and sufficient reason, by the owner to move out and seek quarters elsewhere. Looking to the accomplishment of these ends, the act provides for the adoption by the administrator of regulations fixing the rent to be charged and also restricting the owner's right to terminate the tenant's occupancy. The act goes on to provide that "Regulations . . . under this Act may contain such provisions as the Administrator deems necessary to prevent the circumvention or evasion thereof"; 56 Stat. at Large, p. 27, § 2 (g); 50 U. S. C. App. § 902 (g) (Sup. 1941-1943); and, that it shall be unlawful to violate the regulation fixing rents or "to remove or attempt to remove . . . the tenant . . . or to refuse to renew the lease . . . because such tenant or occupant has taken, or proposes to take, action authorized or required by this Act or any regulation, order, or requirement thereunder." 56 Stat. at Large, p. 28, § 4 (a) and (b); 50 U. S. C. App. § 904 (a) and (b) (Sup. 1941-1943).

Section 6 of the regulation, which it is conceded was applicable to the plaintiff's property, provides: "So long as the tenant continues to pay the rent to which the landlord is entitled, no tenant shall be removed from any housing accommodations, by action to evict or to recover possession, by exclusion from possession, or otherwise, nor. shall any person attempt such removal or exclusion from possession, notwithstanding that such tenant has no lease or that his lease or other rental agreement has expired or otherwise terminated, and regardless of any contract, lease, agreement or obligation heretofore or hereafter entered into which

provides for entry of judgment upon the tenant's confession for breach of the covenants thereof or which otherwise provides contrary hereto," unless the case falls within one of seven exceptions enumerated. One of these exceptions is the provision under consideration. Section 9 states that the "requirements provided in this regulation shall not be evaded, either directly or indirectly."

The provisions to which we have referred, considered in connection with the context of the act as a whole and of the regulation, give expression to a clear intent to safeguard to the fullest possible extent the tenant's right to continuing occupancy. Without attempting a definition of "good faith" as used in the regulation, it is sufficient for the purposes of this decision to point out that the reason and purpose shown by the provisions discussed, in the light of the definitions quoted, afford compelling reason for concluding that the existence of an actual intent by the plaintiff to use and occupy the third-floor tenement as a dwelling for herself would not constitute "good faith" if the real, dominant and controlling motive and purpose of her action were to get revenge upon the defendant by ousting him. We so hold. To hold otherwise would be to defeat the primary intent in this regard expressed in the act. Accordingly, the justice properly instructed the jury to take into consideration the various relevant circumstances in determining whether or not the plaintiff acted in good faith in seeking possession of the third-floor tenement. See *Gould* v. *Butler*, (D. C. Mun. App.) 31 Atl. (2d) 867, 869; *Downs* v. *Karsh*, (D. C. Mun. App.) 33 Atl. (2d) 620; *Shaffer* v. *Bowes*, (D. C. Mun. App.) 31 Atl. (2d) 690; *Bumgarner* v. *Orton*, (Cal.) 146 Pac. (2d) 67. While the charge might properly have contained some further explanation of what was meant

by "good faith," as already pointed out the phrase has a well-defined and generally understood meaning. Since the instructions made clear that the motive and purpose with which the plaintiff acted in seeking possession, as shown by the circumstances, and not merely her actual intent to occupy as a home, were determinative of her "good faith," the lack of a formal definition of the phrase could not have prejudiced the plaintiff. *Krawitz* v. *Ganzke,* 114 Conn. 662, 666, 159 Atl. 897.

Only one other assignment of error requires mention. The trial court, on motion of the defendant, made an order in which it "remanded" the bill of exceptions to the justice to be amended by adding his charge to the jury on the question of good faith, and the justice signed an amendment which was filed in court. The plaintiff assigns as error that the jurisdiction of the justice had ended before he signed the amendment and that six months had passed since the trial before him. Without considering the propriety of the procedure followed, it is a sufficient answer to the assignment of error to point out that the allowance of a bill of exceptions is a ministerial act which a justice may properly perform after his court has adjourned; *Todd* v. *Bradley,* 97 Conn. 563, 567, 117 Atl. 808; *Alcorn* v. *Fellows,* 101 Conn. 22, 33, 127 Atl. 911; and that permitting the amendment after the rather long time since the trial was a matter within the discretion of the trial court.

There is no error.

In this opinion the other judges concurred.