## McSWEENEY v. WILSON.
### No. 391.

Municipal Court of Appeals for the
District of Columbia.
July 17, 1946.

Rehearing Denied July 24, 1946.

470

Charles F. Hailer, of Washington, D. C. (Sherman Westrich, of Washington, D. C., on the brief), for appellant.

Stanley H. Kamerow, of Washington, D. C. (Allan L. Kamerow, of Washington, D. C., on the brief), for appellee.

Before CAYTON, Chief Judge, and HOOD, and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

The sole question presented by this appeal is whether the trial court erred in ordering judgment for plaintiff notwithstanding a verdict for defendant.

Appellee is the landlord of a rooming house, and appellant is one of her roomers. The landlord sued for possession of appellant's room, under the District of Columbia Emergency Rent Act, on the ground that she desired possession in good faith for her immediate and personal use and occupancy.[1] At the conclusion of all of the evidence, the landlord moved for a directed verdict, which was overruled. The case was then presented to the jury under instructions agreed to by both parties. The jury returned a verdict for the roomer. Thereupon the landlord filed the motion for judgment notwithstanding the verdict, which was granted. The roomer prosecutes this appeal.

Under rule 46(b) of the trial court, following rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason not granted, the court is deemed to have submitted the action to the jury subject to a later determination of legal questions raised by the motion. Under this rule the motion for judgment notwithstanding the verdict "cannot be granted unless, as matter of law, the opponent of the movant failed to make a case and, therefore, a verdict in movant's favor should have been directed."[2] Thus the test to be applied to a motion for judgment n.o.v. is the same as that to a motion for directed verdict. The latter rule has been too often stated to need repetition.[3]

The evidence in the present case may be summarized very briefly. The landlord used as her bedroom a room on the first floor which had previously served as a general parlor for all of the tenants. By reason of the requirements of the Rent Act respecting minimum service standards, she wished to reconvert this room into such

---

[1] Code 1940, § 45—1605(b) (2).

[2] Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 194, 85 L.Ed. 147. See also Shewmaker v. Capital Transit Co., 79 U.S.App.D.C. 102, 143 F. 2d 142.

[3] Lalekos v. Manset, D.C.Mun.App., 47 A.2d 617; Washington Realty Co., Inc., v. Harding, D.C.Mun.App., 45 A.2d 785; Birchall v. Capital Transit Co., D.C.Mun. App., 34 A.2d 624. See also Galt v. Phœnix Indemnity Co., 74 App.D.C. 156, 120 F.2d 723.

a parlor. It became necessary, therefore, for her to move into another room. One of the primary reasons she chose appellant's room was that it had a large closet fronting on the hallway, which she needed for the storage of linens. Both the parties testified that prior to the serving of a 30-day notice to quit by the landlord upon the roomer there had been no difficulties between them, but that they had had disputes since the service of such notice.

Appellant relied upon these recent disputes and upon the fact that after the notice was given other rooms in the house became vacant. Appellant also urged that the room occupied by her is on the third floor, and, in her opinion, it is the most inaccessible room in the building; that there was space in the basement where the landlord could store her linens; and that since the service of the notice to quit, the landlord had requested her to make her own bed, and had removed the bed without her consent and had replaced it, with a less comfortable cot. Other roomers testified to the friendship between the parties prior to the service of the notice and to the bad feeling between them since that time.

The principles to be applied in deciding such cases have been stated on numerous occasions.[4] One of those principles is that if the owner has several properties available, the choice of which he shall occupy is for him.[5] Another such principle is that even though the landlord intends to actually occupy the premises it can not be said that he acts in good faith if his dominant purpose is to evict the tenant.[6] The only possible claim of bad faith on the part of the landlord even suggested by the evidence here is that she might have wanted to evict this tenant because of ill will toward her. The evidence was undisputed, however, as already indicated, that these parties were very friendly until after the 30-day notice to quit had been served. While ordinarily the status of parties is to be judged as of the date of the trial, we believe the situation is different under the circumstances of this case. Obviously, the state of the landlord's mind with respect to her good faith in desiring this particular room is to be determined as of the date she served the 30-day notice to quit upon appellant. It was then she reached the decision to terminate the tenancy. The suit followed in order to make the termination effective. After the service of the notice, it was only natural that mutual bad feeling developed. Persons facing court contests are seldom very friendly.

Except for the testimony of such bad feeling, developed as described, there was no substantial evidence challenging the good faith of the landlord. In the absence of such challenging evidence no jury question was presented.[7] We conclude, therefore, that it would have been proper for the trial court to have directed a verdict for the landlord at the conclusion of all the evidence. Hence the granting of the motion for judgment notwithstanding the verdict was also proper.

Affirmed.

[4] Olesoff v. Osbourn, D.C.Mun.App., 47 A.2d 514 and cases there cited.

[5] Staves v. Johnson, D.C.Mun.App., 44 A.2d 870.

[6] Staves v. Johnson, supra.

[7] Olesoff v. Osbourn, supra.