SHAW, P. J.
These appeals require us to decide whether two sets of landlords, seeking to recover possession of controlled housing accommodations from their respective tenants, are, in so doing, acting “in good faith,” as that phrase is used in the federal rent control statutes.
The case of Janise v. Bryan arises under the Housing and Bent Act of 1947 (Public Law 388, 79th Congress, 61 Stats. 193), which provides, in section 209(a) (2) (50 U.S.C.A. App. p. 505, § 1899(a) (2)), that no landlord may maintain an ac *938 tion or proceeding to oust a rent paying tenant from controlled housing accommodations as to which there is a maximum rent “unless ... (2) the landlord seeks in good faith to recover possession of such housing accommodations for his immediate and personal use and occupancy as housing accommodations.” In the ease of Rhodes v. Allen the plaintiffs proceeded under the Housing and Rent Act of 1948 (Public Law 464, 80th Congress) amending the former statute, effective April 1,1948, by inserting immediately after the words just quoted from section 209(a) (2) the following words: “or for the immediate and personal use and occupancy as housing accommodations by a member or members of his immediate family ...”
These statutory provisions are very much like the rent control act passed by Congress for the District of Columbia (Public Law 327, as amended by Public Law 715, 77th Congress), and the rent regulation for housing, formerly in force adopted by the Office of Price Administration under the Emergency Price Control Act [56 Stats. 23 as amended, 50 U.S.C.A. App. § 901 et seq.]. They all prohibit the eviction of rent paying tenants of housing accommodations and contain exceptions of cases where the landlord seeks possession of the accommodations “in good faith” for specified purposes, one of them being self-occupancy by the landlord, as well as other exceptions where the phrase “in good faith” does not appear. This phrase undoubtedly has the same significance in all of these laws and regulations. (See Stillwell v. State Bar (1946), 29 Cal.2d 119, 123 [173 P.2d 313].)
Statutes must be so construed as to give effect to all their words, if that is reasonably possible and consistent with the legislative intent. (McDonald v. Thompson (1938), 305 U.S. 263, 266 [59 S.Ct. 176, 83 L.Ed. 164, 166]; County of Los Angeles v. Frisbie (1942), 19 Cal.2d 634, 641-2 [122 P.2d 526]; Whitley v. Superior Court (1941), 18 Cal.2d 75, 78 [113 P.2d 449]; Fresno City H. S. Dist. v. DeCaristo (1939), 33 Cal.App.2d 666, 672 [92 P.2d 668].) In the statutes before us as well as in the other provisions referred to, the phrase “in good faith” is in each case immediately followed by a detailed and definite description of the purpose for which the landlord must seek possession in order to come within the exception. The phrase is not needed in any of these exceptions, to explain the description of the purpose or for mere emphasis. It can have effect, in the provisions under consideration only by regarding it as adding another element *939 which the landlord must show, in addition to the required purpose, in order to oust his tenant. In other words, the reality of the landlord’s intention to occupy the premises himself, or to carry out any of the other authorized purposes, is not, of itself, equivalent to good faith.
Such has been the holding of the cases construing the statutes or the regulation above mentioned. In Snyder v. Reshenk (1944), 131 Conn. 252 [38 A.2d 803, 807], which arose under the rent regulation, the court said: “Without attempting a definition of ‘good faith’ as used in the regulation, it is sufficient for the purposes of this decision to point out that the reason and purpose shown by the provisions discussed, in the light of the definitions quoted, afford compelling reason for concluding that the existence of an actual intent by the plaintiff to use and occupy the third-floor tenement as a dwelling for herself would not constitute ‘good faith’ if the real, dominant and controlling motive and purpose of her action were to get revenge upon the defendant by ousting him. We so hold. To hold otherwise would be to defeat the primary intent in this regard expressed in the act. . . . Since the instructions made clear that the motive and purpose with which the plaintiff acted in seeking possession, as shown by the circumstances, and not merely her actual intent to occupy as a home were determinative of her ‘good faith,’ the lack of a formal definition of the phrase could not have prejudiced the plaintiff. ’ ’
In Staves v. Johnson (1945; D.C.Mun.App.), 44 A.2d 870, which was governed by the District of Columbia act, the Municipal Court of Appeals for the district said: “However, we have never attempted to define ‘good faith.’ The term is not susceptible of exact definition. It has been defined, broadly, to mean ‘honestly, without fraud, collusion, or deceit.’ Bumgarner v. Orton, 63 Cal.App.2d Supp. 841, 844 [146 P.2d 67, 69]. Applied to a situation like the one at hand, it means generally that the landlord honestly intends to actually occupy the premises, that occupancy for his own use is his primary motive, and that he is not guided by an ulterior motive, the object of which is to evade or defeat the purposes of the statute. Even though the landlord intends to actually occupy the premises it cannot be said that he acts in good faith if his dominant purpose is to evict the tenant. In other words, the actuating motive of the landlord must be the desire to possess the premises, not to dispossess the tenant.” This language was quoted in part and followed in a case arising under the *940 O.P.A. rent regulation. (Fetz v. Kreiling (1948), 76 Ga.App. 848 [47 S.E.2d 600, 601].)
In McSweeney v. Wilson (1946; D.C.Mun.App.), 48 A.2d 469, 471, another ease involving the District of Columbia statute, the court said: "... even though the landlord intends to actually occupy the premises it can not be said that he acts in good faith if his dominant purpose is to evict the tenant. ’ ’
In Shaffer v. Bowes (1943; D.C.Mun.App.), 31 A.2d 690, 691 the court said of the District of Columbia Act: “. . . the Act did not intend to prevent an owner from occupying his own premises, provided such occupancy is sought in good faith and not for the purpose of evading or defeating the purpose of the Act. ’ ’ This language was quoted and followed in Colwell v. Stonebraker (1943; D.C.Mun.App.), 31 A.2d 866, 867, and was substantially repeated and followed in Downs v. Karsh (1943; D.C.Mun.App.), 33 A.2d 620-621.
In Lelek v. Baker (1944), 309 Mich. 210 [14 N.W.2d 838], the plaintiff, proceeding under the rent regulation above mentioned, sought to evict defendants from a flat owned by him in order that he might himself occupy it. Under that regulation the housing of other members of his family was not a purpose for which he could evict his tenants. The plaintiff also owned a dwelling elsewhere which he was occupying. The trial court found that plaintiff’s only purpose in seeking to move into the flat was to permit his married daughter and her husband and a son about to be married to occupy the dwelling in which plaintiff was then living, that other reasons alleged by him for the move did not exist, and that the plaintiff was not acting in good faith. This decision was affirmed on appeal.
In Gibson v. Corbett (1948), 87 Cal.App.2d Supp. 926, 931, 932 [200 P.2d 216], the landlord sought possession for her own occupancy, under the Housing and Rent Act of 1947, and a decision for the plaintiff was reversed because of the trial court’s erroneous interpretation of the statutory provision regarding good faith, the court on appeal saying: ‘ ‘ Obviously, if this view prevails, all a landlord need do is to testify that he intends to move in, to establish his right to an eviction, irrespective of other motives which may have actuated the commencement of the action against his tenant. ... It is therefore my opinion that mere proof of actual intent to move in is wholly insufficient to support a decision in favor of the landlord. He must establish that he honestly intends to oc *941 cupy the premises; that his own occupancy is his prime motive; that no ulterior reason impels him to defeat or evade the purposes of the act; that he is not attempting to make profit at the expense of a tenant. Thus his whole state of mind, his intent, his purpose are important issues to be resolved. The spirit as well as the letter of the law must be adhered to, and a casual showing may not form the basis for ouster of the tenant.”
We conclude, then, that even though the landlord fully intends himself to occupy the housing accommodations he seeks to recover, or to have them occupied as such by a member of his family, or to carry out any of the other purposes accompanied by the words “in good faith” in the statute, good faith is lacking and he cannot recover if in seeking to oust the tenant the landlord is guided by some ulterior motive, the object of which is to evade or defeat the purposes of the statute, such, for instance, as revenge upon the tenant for collecting treble damages for an overcharge (Snyder v. Reshenk, supra), or a dominant purpose to evict the tenant (Staves v. Johnson, supra; McSweeney v. Wilson, supra), or to evict him because he refuses to pay more than ceiling rent (Brown v. Wood (1943), 59 F.Supp. 872), or to provide housing accommodations for others in the place the landlord will vacate, when such a purpose is not authorized by the statute (Lelek v. Baker, supra). In Bumgarner v. Orton (1944), 63 Cal.App.2d Supp. 841, 844 [146 P.2d 67], this court said, in discussing the rent regulation already mentioned: “The phrase ‘in good faith’ is borrowed from equity jurisprudence and must be interpreted accordingly (28 C.J. 715). It simply means ‘honestly; without fraud, collusion or deceit; really, actually, without pretense.’ ” In that case we had before us no such question as that we are now discussing. There the trial court had made an express finding declaring: “The Court finds no necessity for plaintiff to occupy said premises, and for this reason only, finds that plaintiff’s desire to recover possession for her immediate use and occupancy is not in good faith.” We held merely that this conclusion of the trial court was erroneous, that under the O.P.A. regulation, which was there applicable, the test of the owner’s right to recover possession of housing accommodations is his good faith, not his necessity, and that necessity is only one of the factors to be considered. No other factor was there presented as impugning the landlord’s good faith, and we held that lack of necessity, alone, was not enough to show bad faith. The language above quoted is a part of our discussion of this prob *942 lem, and if it can be construed as inconsistent with our conclusion hereinbefore stated as to the meaning and effect of the statutory requirement of good faith, it must be regarded to that extent as obiter dictum and inaccurate.
When the landlord's good faith is in issue, the court may inquire into all the relevant surrounding circumstances. (Bumgarner v. Orton, supra, (1944), 63 Cal.App.2d Supp. 841, 844; Snyder v. Reshenk, supra, (1944), 131 Conn. 252 [38 A.2d 803, 807]; Fetz v. Kreiling, supra, (1948; Ga.App.), 47 S.E.2d 600, 601; Sviggum v. Phillips (1944), 217 Minn. 586 [15 N.W.2d 109, 112]; Staves v. Johnson, supra, (1945; D.C.Mun.App.), 44 A.2d 870, 871; Gould v. Baker (1943; D.C.Mun.App.), 31 A.2d 867, 869.) Good faith, when in issue is the ultimate fact (see Lester v. Isaac (1944), 63 Cal.App.2d Supp. 851, 854 [146 P.2d 524]) and the question is ordinarily one of fact, for determination by the trier of facts. (Fetz v. Kreiling, supra; Sviggum v. Phillips, supra; Staves v. Johnson, supra; Olessoff v. Osbourn (1946; D.C.Mun.App.), 47 A.2d 514, 515; Heindrich v. Dimas-Aruti (1945; D.C.Mun.App.), 42 A.2d 138, 139.)
In the first case before us, Janise v. Bryan, which arises under the Housing and Bent Act of 1947, as originally adopted, the plaintiffs sought possession of an apartment allegedly for the immediate and personal use and occupancy of the plaintiff Julia as housing accommodations. The trial court made written findings from which it appears that the plaintiffs own and personally manage an apartment house containing 51 apartments, and occupy one of the apartments both as a residence and as an office; that the plaintiff Julia is suffering from a mental condition, a psychosis of paranoiac type, and has been advised by physicians that she must live in an atmosphere of tranquility, free from managerial duties in connection with the apartment house, and that she is unable to obtain that freedom in the apartment plaintiffs now occupy; that plaintiffs seek to recover possession of defendants’ apartment in order that plaintiff Julia may reside there and be free from managerial duties, and she intends to reside there; that other apartments in the building, suitable for her needs, have become vacant during her disability but she has not moved into any of them; that “for a long period prior to the institution of this action there has been considerable ill feeling between plaintiffs and defendants and a desire on the part of plaintiffs to oust defendants’’ and that “the principal reason for the maintenance of this action by plaintiffs is to cause the eviction *943 of defendants from the apartment house." As a conclusion of law from the facts found the court declared that “plaintiffs have not acted in good faith in the within action."
The findings just reviewed set forth a number of evidentiary facts. On some of those facts—plaintiff’s mental condition and need of change—a finding of good faith might perhaps be proper. On others, including the ill feeling between the parties, the failure of plaintiffs to take advantage of previous opportunities to secure other quarters for plaintiff Julia, and the desire to evict the defendants as plaintiffs’ “principal reason" for bringing this action, a finding negativing good faith on plaintiffs’ part would be supported, according to the rule already stated. There is no finding, as such, on this question, but there is a conclusion of law which, if placed among the findings of fact, would be quite sufficient to dispose of the issue, and would be supported by the evidentiary facts from which it purports to be a conclusion. This is, therefore, a proper ease for the application of the rule that “a finding may be regarded as one of fact although mistakenly placed among the conclusions of law." (24 Cal.Jur. 961; Bechtold v. Bishop & Co. (1940), 16 Cal.2d 285, 293 [105 P.2d 984] ; Matter of Forrester (1912), 162 Cal. 493, 495 [123 P. 283]; Wood v. Keller (1945), 72 Cal.App.2d 14, 15 [163 P.2d 904].)
If the findings of the evidentiary facts which support the finding of the ultimate fact were themselves unwarranted by the evidence, no doubt the finding of the ultimate fact, since it purports to be a conclusion from those evidentiary facts, would fall with them. We have examined the evidence, and while it is in some respect conflicting, we find it sufficient to support all the evidentiary findings to which we have adverted. We need not decide, therefore, whether the absence of any of them would affect the decision; nor do we see any useful purpose to be served by setting forth the evidence here. Our conclusion is that the judgment in Janise v. Bryan must be affirmed.
In Rhodes v. Allen, the other case now before us, the plaintiffs, proceeding under the amendment made by the Housing and Rent Act of 1948 to the Housing and Rent Act of 1947, already quoted, sought to recover possession of housing accommodations for the immediate and personal use of their daughter. Their allegation of good faith was denied, and this was the only issue contested at the trial. No express findings were made, so we must imply a finding for defendant on this issue. (Estate of Rule (1944), 25 Cal.2d 1, 10 [152 *944 P.2d 1003, 155 A.L.R. 1319].) The plaintiff Sarah Rhodes testified that there are three houses on the property involved, that the two plaintiffs, their daughter in question, this daughter’s 11-year-old son, and three sons of plaintiffs live in one of these houses, which has three bedrooms, and one of the family sleeps in a hallway and one in the dining room. There is another house, having four rooms including one bedroom, which is occupied by a lone woman as tenant. The third house, occupied by the defendant and her husband and two children, also has four rooms, one of which is a bedroom. Plaintiffs’ daughter has been living with plaintiffs continuously since March, 1948, except for three or four sojourns in hospitals, and she underwent a surgical operation in June, 1948. This daughter owns no property and had no lease on any property. She had moved from another house to plaintiffs’ premises in March, 1948 because she was not able to keep up the other house and her illness prevented her from working. She would move into the house occupied by defendant, if allowed, and did not intend to rent the house or share it with any other person. The notice to terminate defendants’ tenancy was served April 22, 1948. All these facts appear from the testimony of plaintiffs’ witnesses, but they are not in any way disputed or denied by any other testimony, nor is the testimony of plaintiffs’ witnesses in any way impeached. The only testimony produced by defendant having any possible bearing on her defense, is her own that, in April, 1948, she overheard a telephone conversation between plaintiff Sarah Rhodes and her daughter (not the one for whom plaintiffs seek to recover the house), in which plaintiff said that “she desired to evict defendant but that she might have some trouble getting her out.”
We see nothing in all this to cast any doubt on plaintiffs’ good faith or on the reality of their intent to have their daughter occupy the house when they obtain possession of it. The burden of proof in both these matters is on plaintiffs. But the defendant does not contend on this appeal that the plaintiffs do not intend in fact to carry out their stated purpose, the evidence on the point is all one way and no reason appears for doubting it. The situation seems to be one where the credibility of plaintiffs' witnesses was not in question, so that the principle is applicable that: “ [T]he trier of fact is not entitled, arbitrarily or upon mere caprice, to disregard uncontradicted, entirely probable testimony of unimpeached wit *945 nesses.” (Mantonya v. Bratlie (1948), 33 Cal.App.2d 120, 127 [199 P.2d 677].)
On the question of good faith, it is true, as we have already stated, that the reality of the landlord’s intent to carry out the purpose for which he avowedly seeks possession of the premises is not equivalent to good faith. But the evidence relied on to show good faith is often only that adduced to prove reality of intent. From the reality of intent, when accepted as a fact, an inference of good faith may be drawn, in the absence of countervailing circumstances. (See Olessoff v. Osbourn, supra (1946; D.C.Mun.App.), 47 A.2d 514.) There is a disputable presumption in this state “that private transactions have been fair and regular. ’ ’ (Code Civ. Proc., § 1963, subd. 19.) This is equivalent to a presumption of good faith (Roscoe Moss Co. v. Jenkins (1942), 55 Cal.App.2d 369, 378 [130 P.2d 477]; McClure v. Graham (1935), 9 Cal.App.2d 353, 360 [50 P.2d 84]); and it has often been declared that there is a presumption of good faith (31 C.J.S. 745; McDonald v. Robertson (1939; C.C.A. 6), 104 F.2d 945, 947; Fidelity & Deposit Co. v. Grand Natl. Bk. of St. Louis (1934; C.C.A. 8), 69 F.2d 177, 183; Todd v. Payne (1926), 77 Cal.App. 306, 308 [246 P. 816]; Klemmer v. Klemmer (1919), 42 Cal.App. 618, 626 [187 P. 85].) This presumption is, of course, rebuttable; but we see nothing to rebut it in the case under consideration. For this purpose defendant points to the telephone conversation of plaintiff overheard by defendant; but plaintiff’s statement, made near the time when she gave defendant notice to terminate her tenancy, was merely that she desired to evict defendant and anticipated some trouble in doing so. No statement of purpose or reason for the desire was made. The existence of the desire to evict was consistent with the notice and with plaintiff’s present avowed purpose, even if the conversation was before the notice. The anticipation of trouble might reasonably be entertained by any landlord desiring nowadays to evict a tenant, and has been justified by the event. Neither tends to disprove the good faith of plaintiffs.
Reference is also made by defendants to the assumed fact that “appellants based their whole desire to evict this respondent” on the surgical operation performed on their daughter, and to the fact that, while the notice to quit was given in April, this operation was not performed until June. It does not appear from the record that plaintiffs base “their whole desire” to evict defendants on this operation. The record further shows as a reason for plaintiffs’ desire that in March, *946 shortly before the notice was given, this daughter and her 11-year-old son left her former place of abode and moved in with plaintiffs, thus increasing the number of occupants of plaintiffs’ three bedroom house to seven, of whom one slept in the hallway and one in the dining room, and that this daughter had made three other visits to hospitals before her operation, had been ill for some time before moving, and was for that reason unable to keep up her own place. These facts would afford sufficient justification for plaintiffs’ desire to obtain additional living space for their family, even without the operation, which merely adds to the urgency of their desire but does not impugn their good faith.
Attention is also called by defendant to the fact that on their property the plaintiffs have another house of the same size as that occupied by defendant, and that this is occupied by one person, whereas there are four in defendant’s family. Under the statutes and regulations we are considering, it is well established that where an owner has several properties available, the choice of which one he shall occupy is for him. (Shaffer v. Bowes, supra, (1943; D.C.Mun.App.), 31 A.2d 690, 691; Colwell v. Stonebraker (1943; D.C.Mun.App.), 31 A.2d 866, 867; Downs v. Karsh, supra, (1943; D.C.Mun.App), 33 A.2d 620, 621; Staves v. Johnson, supra, (1945; D.C.Mun.App.), 44 A.2d 870, 871; McSweeney v. Wilson, supra, (1946; D.C.Mun.App.), 48 A.2d 469, 471; Sviggum v. Phillips, supra, (1944), 217 Minn. 586 [15 N.W.2d 109, 111]; Zajac v. McNulty (1944), 51 N.Y.S.2d 484, 487.) Here no reason for plaintiffs’ choice of one rather than the other of their houses for their daughter’s occupancy appears or is suggested by the record, nor is there any ground for supposing that it indicates malice or ill will toward defendant, or is actuated by anything other than the necessity of choosing. Under such circumstances, the choice does not show lack of good faith.
Defendant makes objection here to the notice to quit served upon her on the ground that only one of two joint owners of the property agreed to it. There are two plaintiffs in the action and the testimony shows they were joint owners of the property. At the trial a notice was produced bearing at the end in typewriting, “John & Sarah Rhodes Owners by” and following this the handwritten name “John Rhodes.” Proof was made of the service of this notice on the defendant and it was then admitted in evidence without objection. The notice was sufficient in form to be the notice of both joint owners. If it failed to be their joint notice, this was only *947 because of some defect in the making or the authorization of the signatures. If defendant desired to question it in either of these respects she should have made a proper objection at the trial. The objection comes too late when made the first time on appeal. (Shain v. Sullivan (1895), 106 Cal. 208, 211 [39 P. 606]; Tilden Lumber etc. Co. v. Bacon Land Co. (1931), 116 Cal.App. 689, 692 [3 P.2d 350].)
The judgment in Janise v. Bryan is affirmed, respondents to recover their costs of appeal.
The judgment in Rhodes v. Allen is reversed, appellants to recover their costs of appeal.
Bishop, J., and Stephens, J., concurred.