## GOULD v. BUTLER et al.

### No. 40.

Municipal Court of Appeals for the District of Columbia.

April 19, 1943.

---

Jacob N. Halper, of Washington, D. C., for appellant.

J. Edw. Bindeman, of Washington, D. C., for appellees.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

CAYTON, Associate Judge.

Plaintiffs had for several years been the owners of premises 1409 Emerson Street, N. W. in this District. For some seven years prior to July 1941 they had personally occupied the premises as a dwelling. They then leased it to the defendant Myrtle B. Gould for a term of one year. When

the lease was made Mr. Butler (to whom we shall refer as plaintiff) told Mrs. Gould that he would want to resume possession at the end of the lease which by its terms expired on July 31, 1942. Plaintiffs in the meantime went to live on a farm which Mr. Butler owned jointly with a brother. His arrangement with that brother was that they would alternately occupy the farm for two year periods. His period of occupancy was to expire at the end of 1942. Plaintiff is employed in a dairy in Alexandria, Virginia. His immediate family consists of himself, his wife and a young daughter. Both his daughter and wife are suffering from ill health; the farm house is an old structure and not well heated; because of the existing labor shortage he cannot obtain help to cut wood for heating purposes. He wrote to defendant early in June 1942 stating that he wished to repossess his property when the lease expired on August 1. The house involved in the suit consists of nine rooms and three baths and at the time of trial was occupied by defendant and her two children, and also by eight roomers who rent from defendant, and most of whom are serving the federal government.

Defendant failed to vacate and there followed a thirty-day notice to quit and, on October 1, 1942, a possessory action in the Landlord and Tenant Branch of the Municipal Court. Trial was without a jury. The trial judge filed a written memorandum making a careful review of the situation and ordering, as of October 22, a finding for plaintiffs and granting a stay of execution to December 15, 1942. Defendant appeals and assigns five reasons for reversal:

■ 1. Defendant contends that the Rent Control Law [1] "should be applied, not in view of the controversy of the parties, but rather in the light of the evils the act was designed to remedy". Naturally we cannot undertake to decide abstract propositions, but must direct our attention to the case as tried and decided. We do not forget that the Rent Control Law was enacted to prevent the injustices which would be expected to flow from the acutely overcrowded conditions of a war-time Capital; or that it is legislation of a broad social nature and should be reasonably construed so as to accomplish its purposes. One of those purposes is to "freeze" existing tenancies and prevent the ouster of tenants in possession of dwelling properties. Congress, however, made an exception (among certain others) in a situation where—"The landlord seeks in good faith to recover possession of the property for his immediate and personal use and occupancy as a dwelling".

■ We agree that in testing plaintiffs' right to possession under this clause, the spirit as well as the letter of the Act should be considered, and that pretext and flimsy showings should not form the basis for ousting tenants and adding to the acute housing problem in the District. But that is not the situation here. These plaintiffs have no other place to go. They have lost (for two years at least) the right to occupy their farm property. It is but natural that they should turn to their own home here. Congress made an exception in cases of this kind, and we think the trial judge was correct in recognizing the case as properly within the excepted class. Shaffer v. Bowes, D.C.Mun.App., 31 A.2d 690; Colwell v. Stonebraker, D.C.Mun.App., 31 A. 2d 866.

■■ 2. Defendant next urges that the good faith of a landlord seeking possession is not to be measured by his state of mind but by the circumstances of the case. We agree that in examining the question of good faith all circumstances should be considered which will shed light upon whether a proper case for possession has been established. Among these circumstances, is, we think, the state of mind, intent and purpose of the suing landlord as reflected in the evidence. For all of these elements are bound up with the question of good faith, and may help the court decide whether the landlord is merely attempting to juggle his property for profit, or legitimately requires it to live in.

■ 3. Defendant insists that there was no sufficient showing that plaintiffs required the property for their *immediate* and personal use as a dwelling, and points to the fact that though plaintiffs might have remained on their farm until January 1, 1943, they commenced the landlord-tenant suit on October 1, 1942. Perhaps an immediate answer is to be found in the generous stay (to December 15th) which the trial court allowed. Furthermore we think it cannot be said that one who leased his property for precisely one year, made

[1] Code 1940, 45—1601 et seq.

it plain at the time that when the year expired he wished it back, reiterated it almost two months before the expiration of the lease, and finally sued for possession two months after he might have sued, can be said to have been derelict, unfair or unduly hasty in his dealings with the tenant. We think the situation is somewhat analogous to that of a landlord who being required to give only thirty days notice to quit actually gives a longer notice. Our court of last resort ruled in Bliss v. Duncan, 44 App.D.C. 93, that a tenant cannot complain because he receives a longer notice than the law requires. We think it would be imposing an unfair restriction to require a showing in cases like this that the landlord must have his property at once. The word *immediate* as used in the Rent Act, need not always mean *desperate*.

▆▆ 4. Because the plaintiff works in Alexandria, Virginia defendant contends that he is not within the protective purview of the Rent Act as one would be whose duties required him to work within the District. We cannot accept this view. For many practical purposes the city of Alexandria is like a suburb of Washington and we judicially know that many people who work here live in Alexandria. Probably the converse is also true. Should the plaintiff be denied the protection of the law merely because the necessity of earning a living takes him into the suburban area? Can we say that because his work is in Alexandria he must look for living quarters there when in fact he owns a home here in Washington? We think not.

▆▆ 5. Finally defendant urges that plaintiffs should not have possession because it would result in ousting eight roomers who have rented from defendant and live in the premises, and who are not parties to this suit. He bases this contention upon Section 5(b) of the Rent Control Act which prohibits an action against any "tenant" who continues to pay rent. Section 11(f) of the Act defines a "tenant" as a

sub-tenant, sub-lessee or other person entitled to the use of housing accommodations.

It is plain that the conventional relation of landlord and tenant does not exist between plaintiffs and defendant's roomers. Plaintiffs would have found it difficult if not impossible to frame an action so as to properly include them as defendants. As to the substantive rights of the parties it should be noted that between plaintiffs and such sub-tenants there was no privity of estate or contract.[2] When defendant's lease expired, their tenancy came to an end with it.[3] Looking to the procedural aspect, we find in the established Code enactments no provision for making sub-tenants parties defendant in a possessory action. Nor is there such a provision anywhere in the Rent Control Act or in any order, rule or regulation of the Rent Control Administrator. Nor has the Municipal Court made any rule which requires that sub-tenants, roomers or lodgers be joined as parties defendant in landlord and tenant actions. We express no opinion concerning the advisability of such a procedural requirement; we simply point out that none now exists.

It may be that when plaintiffs' judgment is put into effect they may arrange to accept some or all of the tenants in possession as their own tenants. Certain it is that there need be no fear of profiteering, for the rentals cannot be increased except by order of the Rent Administrator.

For such of the tenants as the plaintiffs cannot accommodate there will undoubtedly be a hardship. But neither Congress nor the courts can offer assurance that in the administration of the Act and in the adjudication of cases arising thereunder there will never be a single case of hardship. The most that can be done is to approach such problems sympathetically and examine each claim for possession critically and render judgment according to the right of the matter and the law. This the trial court has done. Its judgment should be

Affirmed.

[2] Lesser v. Pomin, 3 Cal.App.2d 117, 39 P.2d 451; City Inv. Co. v. Pringle, 73 Cal.App. 782, 239 P. 302; Audubon Hotel Co. v. Braunnig, 120 La. 1089, 46 So. 33, 124 Am.St.Rep. 456.

[3] Pedro v. Potter, 197 Cal. 751, 242 P. 926, 42 A.L.R. 1165; Hawley Corp. v. West Virginia Broadcasting Corp., 120 W.Va. 184, 197 S.E. 628, 118 A.L.R. 120.