### HEINDRICH v. DIMAS–ARUTI et al.
### No. 279.

Municipal Court of Appeals for the
District of Columbia.
April 19, 1945.

Thomas C. Bradley, of Washington, D. C., for appellant.

C. L. Dawson, of Washington, D. C., for appellees.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

RICHARDSON, Chief Judge.

Judgment for ·possession was entered in a suit by owners of a dwelling house and the defendant tenant has appealed. The only disputed issue was whether the plaintiffs established their right under Sec. 5(b) (2) of the District of Columbia Emergen-

---

cy Rent Control Act[1] authorizing repossession when—

"The landlord seeks in good faith to recover possession of the property for his immediate and personal use and occupancy as a dwelling."

Plaintiffs, who are husband and wife, purchased the property involved in September, 1944. Defendant was then tenant under a lease expiring December 31, 1944. The premises, containing fourteen rooms, were used as a rooming house and occupied by more than twenty persons.

Notice to quit at the termination of the lease was seasonably given. When the lease expired suit for possession was filed. At the trial, which was before the court without a jury, the plaintiff husband testified that after service in the Army he had been discharged in 1944 and returned to Washington intending to resume the practice of dentistry; that he and his wife were occupying rooms in a house adjoining the premises in suit, their household goods were in an Army warehouse in New York City, they had been unable to find a suitable house for sale or rent prior to the purchase of this property, and that he had bought it for the personal use and occupancy of himself and family. He knew then that it was subject to a lease which would expire on December 31, 1944. The wife testified briefly that they had purchased the house for a home for themselves and their relatives.

The defense evidence was directed to the question of plaintiffs' good faith in seeking possession for their immediate personal use and occupancy as a dwelling. There was evidence tending to show that at the time the property was purchased Dr. Aruti discussed with appellant's wife the matter of some roomers remaining and that he had inquired of two roomers whether they would like to remain. There was also evidence that he had expressed an intention of using some or all of the first floor as a dental office. There was no evidence except that of defendant's wife to impeach plaintiffs' testimony that they intended to personally occupy the property as their home. Mrs. Heindrich testified on direct examination that Dr. Aruti, when he bought the house, said that he was buying it for his dental practice and intended to use only two rooms on the second floor for himself, his wife and mother. But on cross-examination she stated he said he intended to rent to roomers all space not required for his dental office. Then, questioned by the court, she denied having made the statement regarding the use of the two second floor rooms.

■ The Emergency Rent Control Act, extending the terms of leases beyond their contract period, restricting owners in their right to contract with reference to the rental and maintenance of their residential property, as did the basically similar legislation of the First World War,[2] found ample justification in a public crisis in housing caused by a great influx of wartime employees. But the privileges Congress in plain terms reserved to owners must be reasonably construed and enforced by our courts.[3] This principle we have recognized and applied in numerous cases.[4]

■ Here the trial court's finding was based upon substantial evidence that plaintiffs·were seeking to occupy their own property as a dwelling. When their good faith was challenged, it raised an issue of fact which was for the trial judge to decide.[5] An intent to use part of a residence as a dental office, or to rent portions of the property to roomers, does not negative an honest purpose to use and occupy premises as the owner's dwelling. This may be so where considerable portions of the house are rented and will continue to be rented to roomers.[6] Nor is there a yardstick by which the size of a house may be proportioned to the number of persons included in the owner's family.

■ Defendant argues that a lack of good faith is evidenced by discrepancies in the testimony of the plaintiff husband. If so, this affected only the weight of the evidence, and we must assume that the trial

[1] Code 1940, § 45—1605(b) (2).

[2] Block v. Hirsh, 256 U.S. 135, 41 S. Ct. 458, 65 L.Ed. 865, 16 A.L.R. 165.

[3] Mess v. Mosteller, 54 App.D.C. 77, 294 F. 1008.

[4] Shaffer v. Bowes, D.C.Mun.App., 31 A.2d 690; Colwell v. Stonebraker, D.C. Mun.App., 31 A.2d 866; Gould v. Butler, D.C.Mun.App., 31 A.2d 867; Klein v.

Fields, D.C.Mun.App., 32 A.2d 398; Lingo v. Wolfe, D.C.Mun.App., 37 A.2d 270; Miller v. Prophet, D.C.Mun.App., 37 A. 2d 450.

[5] Sviggum v. Phillips, 217 Minn. 586, 15 N.W.2d 109.

[6] Downs v. Karsh, D.C.Mun.App., 33 A.2d 620; see also Gould v. Butler, supra, and Klein v. Fields, supra.

judge gave it such consideration as it deserved.

■ Exception is taken to the trial judge's statement during the argument of the case that he did not believe the testimony of defendant's wife in any respect in which it was not corroborated or was in conflict with the evidence of plaintiffs or their witnesses. This, he said, he based on his observation of the witness and her answers to his questions concerning the contradictions in her testimony which we have noted above. The testimony related to a material point; the court regarded it as a matter as to which the witness could not have been mistaken. Its application of the familiar maxim, falsus in uno, falsus in omnibus, was therefore justified.[7]

Affirmed.

---

[7] The Santissima Trinidad, 7 Wheat. 283, 5 L.Ed. 454; Travers v. Reinhardt, 25 App.D.C. 567; 35 C.J.S., Falsus in Uno, Falsus in Omnibus.