**DEWEY v. CLARK.**

No. 795.

Municipal Court of Appeals for the
District of Columbia.

Argued May 2, 1949.

Decided June 20, 1949.

J. Grahame Walker, Washington, D. C., with whom E. Hilton Jackson and John W. Jackson, Washington, D. C., were on the brief, for appellant.

Herman Miller, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

This appeal is from a summary judgment awarded appellee (plaintiff below) for possession of Apartment 6 in the building at 2500 Massachusetts Avenue, Northwest. Because the records in two earlier trials and the appeals therefrom [1] were incorporated in whole or in part in the record here, a recapitulation of the proceedings is necessary here. All three cases involve the same owner and apartment house and two of them involve the same parties.

In January 1948 appellee Mrs. Clark signed an agreement to purchase 2500 Massachusetts Avenue, Northwest, a building containing eight large apartments, two to a floor and almost identical in floor plan. The purchase price was $200,000 of which $50,000 was paid at settlement, with an outstanding first deed of trust for $100,000 and the remainder secured by a second mortgage. Part of that contract provided: "The purchaser requires for her own use and occupancy the third floor apartment on the East end of the building, [Apartment No. 6, the one in dispute here] and the first floor apartment on the East end." [Apartment No. 2, the apartment under litigation in Thompson v. Clark,

[1] Dewey v. Clark, D.C.Mun.App., 61 A.2d 475; Thompson v. Clark, D.C.Mun.App., 61 A.2d 477.

supra.] Settlement was made on April 19, 1948.

Notice to quit was duly served, followed by a suit for possession of Apartment No. 2, filed in the name of the former owners, in behalf of Mrs. Clark. After numerous motions were argued, the original suit was dismissed with leave being granted to Mrs. Clark to amend and sue as the real party in interest. Accordingly after acquiring title she filed an "Amended Complaint" for possession and the case was tried before a jury, which decided in her favor. Judgment for Mrs. Clark was entered on June 9. Meanwhile the same steps were taken in regard to Apartment No. 6 occupied by appellant Dewey. That case was tried to the court and resulted in a finding and judgment for Mrs. Clark.

Both cases were appealed to this court and we ordered reversals on the ground that the amended complaint in each case was an "attempted substitution of a different factual basis from that relied on in the original complaint and this difference rested on facts occurring after filing of the original complaint."[2] [61 A.2d 475, 477.] In the trial of the Dewey case the defense in the trial court and the appeal were based solely on this procedural point. The opinion of this court did not consider or discuss the implied finding of good faith by the trial court.

In the Thompson case, the issue of good faith was determined by the jury and was one of the alleged errors on appeal, though, as in the Dewey case, it was not considered by us.

From the record in the Thompson trial, which incorporated the record of the prior Dewey trial, it appears that the following facts were introduced into evidence. Mrs. Clark and her husband, an Admiral in the Navy, had originally lived in Kenwood, in a large house adequate for their household, which comprised the couple themselves, two daughters of the Admiral, two servants and their child, and intermittently at least, the son of Mrs. Clark, his wife and child. Later they sold that house and looked for an apartment. Not finding an adequate one they bought a smaller home in Virginia, to

occupy on a temporary basis. In January 1948, as we have said, she bought the apartment building at 2500 Massachusetts Avenue, Northwest.

The Clark family expected that this building would satisfy their somewhat unique housing problem. They intended to occupy two apartments themselves, No. 6 for their own use and No. 2 for Mrs. Clark's son and family, for their servants, and for an office for Mrs. Clark for her extensive business interests and for the management of the apartment. They then intended to continue renting the remainder of the building. On March 18, 1948, she sold the Virginia property and has since June of that year been living in a local hotel.

During the trial of the first case there was an effort by cross-examination to question the good faith of the couple in seeking possession of both apartments. To this end Mrs. Clark was questioned and admitted that one of the daughters attended boarding school and only infrequently visited the couple; that she did not intend to charge Mrs. Clark's son or his family rent. The couple's plans for the use of both apartments, Nos. 6 and 2, were extensively covered; also their anticipated use of each room, and their plans for renovation and redecoration. Mrs. Clark by her testimony, as well as by written documents in evidence, consistently maintained, that she was seeking apartment No. 6 for her own individual personal use and occupancy. In the Thompson case, as we have seen, the jury decided in favor of Mrs. Clark, for possession of Apartment No. 2. In the Dewey case, the trial judge granted Mrs. Clark possession.

After reversal by this court, a new action was filed by Mrs. Clark against Dewey December 17, 1948, again seeking possession of apartment No. 6. This time he challenged the validity of the service of process, and also denied that Mrs. Clark desired possession for her personal use and occupancy, in good faith. He charged that she had purchased it as a speculation, that she proposed to turn the building into a cooperative and was offering the premises in dis-

---

[2] Dewey v. Clark, supra.

pute for sale. After arguments on several motions affidavits were filed by the parties. In Mr. Dewey's affidavit he alleged on information and belief that Mrs. Clark was offering all the units in the building for sale on a cooperative basis, and he recited that it would be necessary to take her deposition in order to develop the facts and place them before the court. Accordingly the deposition of the plaintiff was taken, and also that of her real estate agent. Upon the basis of the pleadings, affidavits, depositions, documentary evidence, and the records in the previous two cases, the trial judge awarded a summary judgment to Mrs. Clark for possession of the apartment.

■ Appellant challenges the validity of the service of the summons upon him, on the ground that such summons was delivered by posting on his apartment door, and that such service is only authorized "if no one be in actual possession of said premises, or residing thereon." Code 1940, § 11—736. He contended that some one was in actual possession of the premises and residing thereon at the time of the service. It was shown that the deputy marshal received the copies for service on Friday, December 17, 1948; that he endeavored to make service on the following day by knocking on the door of the apartment but received no response; that he left the building and returned on the following Monday, again knocking on the door and again receiving no response. He later returned in a third effort to effect service and again received no response to his knock, and it was then he posted the notice on the apartment door. There is no dispute that the defendant found the summons fastened to the door the same afternoon and received the same into his possession. We think there is no question that the requirements of the statute as to service were satisfied in this case. See Etelson v. Andre, D.C. Mun.App., 61 A.2d 806.

In support of his contention that Mrs. Clark purchased the property as a speculation, and not for her own use, Mr. Dewey brought into evidence the fact that a provisional organization of a cooperative apartment association had been made. He pointed to several advertisements in local newspapers offering units for sale, as well as the sales prospectus and proposed contract of sale. He contends that the failure to specifically exempt apartments Nos. 6 and 2 shows that the intent was to sell these as well, and that the offer was made to the general public without restriction. But Mrs. Clark specifically denied that she had ever offered either apartment No. 6 or 2 for sale to any one orally or in writing. Further she points to the fact that it was not necessary to exempt them in the advertisements since she would own all the stock in the cooperative until she sold shares representing the other apartments. Further, she had offered Dewey the right to purchase any apartment in the building except the two she was reserving for her personal use. She also denied that she ever authorized the sale of either apartment, and in this she was corroborated by her real estate agent. This agent was given an exclusive contract and was authorized to sell all but the two exempted ones. Also, this agent had prepared the advertisements and had never been given authority to offer the two apartments for sale. Furthermore, none of the advertisements upon which Dewey placed much emphasis offered more than three of the eight apartments, a fact which by itself effectively negatives his contention.

In regard to the organization of the cooperative association, it was testified that the idea came to Mrs. Clark approximately six months before this trial, and the organization was incorporated in Maryland in January 1949. This plan was devised as the best way to get the building into shape without too great a financial burden being placed on single ownership. As of the date of the summary judgment the cooperative did not as yet have the title to the property. This was because the property was not to be conveyed until completion of repairs. The price of the property to the association is to be $390,000 (it was purchased originally for $200,000), represented by eight certificates, each representing $\frac{1}{8}$ interest in the property. Each was to be sold at $50,000 except the two first floor apartments which would be priced at $45,000 each.

Half would be paid at the time of sale, with the remainder due in 10 years, in a lump sum without interest.

Other pertinent features of the cooperative plan include the assignment of the certificates back to Mrs. Clark to secure the second half of the purchase price. She would pay off the outstanding deeds of trust and each purchaser would be saved harmless against any default, the balance of the purchase price not becoming due until the property is free. She has entered into agreements as to only two of the apartments under this proposal, but as yet the sale to the association is still in an executory stage.

It was also disclosed that six of the apartments have become vacant during the past year of litigation, with another about to become so, and that Mr. Dewey is the only holdover tenant. In support of her desire for this unit from the beginning, Mrs. Clark said she wanted an eastern exposure, high in the building but not directly under the roof, so as to escape summer heat. Although other units are available, she has refused to move into any but the ones she originally requested almost a year and a half ago.

Upon a consideration of all the facts and circumstances outlined above, we rule that the trial judge was correct in granting judgment for Mrs. Clark. She has sought the apartment occupied by defendant Dewey for over a year for her own personal use and occupancy. By no evidentiary medium was it made to appear that she sought apartment No. 6 for any reason other than for her personal residence, and in complete good faith. In this proceeding the defendant says that the formation of the cooperative is evidence of bad faith and that the advertisements do not exempt the two apartments in question. However, it nowhere appears that either of these two apartments was ever offered to any one. It results that there was nothing more than a denial by defendant, and no real issue for determination by trial.

It is true that this court has held that the good faith of a landlord seeking possession of a dwelling under the Rent Act is ordinarily a question for the trier of the facts. But this is when there has been substantial evidence presented challenging the good faith; it is then that a question of fact arises for determination.[3] Here there was none.

We have also held that the availability of other quarters does not necessarily constitute bad faith,[4] and that the fact that the landlord would re-rent part of the premises does not impugn his good faith.[5] Also, that when the owner has several properties, the choice of occupancy is with him.[6]

In Schwartz v. Sandidge, D.C. Mun.App., 63 A.2d 869, 871, construing Municipal Court Rule 51(d), we held that "on a motion for a summary judgment the burden of establishing the non-existence of any genuine issue of fact is upon the moving party, all doubts are resolved against him, and his supporting affidavits and depositions, if any, are carefully scrutinized by the court."[7] Considering the entire case by these tests we are clear in our belief that there was no material issue presented upon which a trial of the case could properly be had. Seldom, on a motion for summary judgment, are all the essential facts and surrounding circumstances brought out with such completeness and clarity as was done in this case. But here the pleadings, records, affidavits, depositions and other

---

[3] Staves v. Johnson, D.C.Mun.App., 44 A.2d 870, and cases cited; Olessoff v. Osbourn, D.C.Mun.App., 47 A.2d 514. In the latter case no such substantial evidence was presented and the decision of the trial court was reversed in favor of the landlord. There an intent to rent out part of the premises and to bring in relatives was held not to negative the good faith of the owner.

[4] Colwell v. Stonebraker, D.C.Mun. App., 31 A.2d 866.

[5] Klein v. Fields, D.C.Mun.App., 32 A.

2d 398; Heindrich v. Dimas-Aruti, D.C. Mun.App., 42 A.2d 138; Olessoff v. Osbourn, supra.

[6] Shaffer v. Bowes, D.C.Mun.App., 31 A.2d 690: Downs v. Karsh, D.C.Mun. App., 33 A.2d 620; McSweeney v. Wilson, D.C.Mun.App., 48 A.2d 469.

[7] Citing among others, McConchie v. Realty Associates, D.C.Mun.App., 54 A. 2d 862; Sprague v. Vogt, 8 Cir., 150 F.2d 795; Walling v. Fairmont Creamery Co., 8 Cir., 139 F.2d 318.

documents graphically established that plaintiff required the premises in good faith for her personal occupancy. And defendant's challenge of plaintiff's claim was entirely without substantial support.

Affirmed.