*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 21-CV-0584

ATLAY BROWN, APPELLANT,

V.

YOLANDA RAINES, *et al.*, APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(2018-LTB-018686)

(Hon. José M. López, Trial Judge)

(Submitted October 19, 2022                    Decided May 11, 2023)

*Stephen O. Hessler* was on the brief for appellant.

*Martin L. Saad* was on the brief for appellees.

Before DEAHL and ALIKHAN, *Associate Judges*, and GLICKMAN,[*] *Senior Judge*.

DEAHL, *Associate Judge*:  Atlay Brown sought to evict her tenants, Yolanda

and Whitfield Raines, who leased a room in her house.  Brown sued to regain

---

[*] Judge Glickman was an Associate Judge of the court at the time of submission.  He began his service as a Senior Judge on December 21, 2022.

possession of the unit for her "immediate and personal use and occupancy as a dwelling," as permitted by D.C. Code § 42-3505.01(d). The trial court granted summary judgment against Brown after concluding that she was unable to articulate "a concrete plan for how she will use the room," which the court viewed as a prerequisite to satisfying § 42-3505.01(d).

We disagree. While a landlord generally must demonstrate that they plan to move into the tenant's unit when they attempt to evict the tenant under § 42-3505.01(d), this is not the typical landlord-tenant arrangement where the tenant lives in a wholly separate residence. This is instead a shared house, which Brown already occupies as a dwelling, and she shares the house's common areas—from the kitchen to a bathroom to the living room—with the Raineses. In that context, § 42-3505.01(d) does not demand that Brown have a concrete plan for what she intends to do with the additional space, nor does it require that she establish a particular need for the reduced traffic in the common areas that would result from evicting the Raineses. It is enough that she intends to make their room part of her dwelling. Brown's assertions that she would simply like the additional room to use as a home office, extra storage, or the like, are not deficient as a matter of law, and so we conclude that summary judgment against her was not warranted.

At the same time, a landlord's claimed desire to expand their living space need not be taken at face value, even in this context. And Brown's inability to articulate what she would like to do with the Raineses' room could certainly be considered as evidence that she is not acting in good faith. If it turns out that Brown's stated desire is in fact a pretextual basis for ousting tenants, as the Raineses contend, then eviction would not be permitted. *See Gould v. Butler*, 31 A.2d 867, 869 (D.C. 1943) ("[P]retext and flimsy showings should not form the basis for ousting tenants."). The trial court has not addressed the question of whether summary judgment is warranted on the grounds that Brown was acting pretextually and vindictively in attempting to evict the Raineses, however, so we vacate the order granting summary judgment and remand for further proceedings consistent with this opinion.

## I.

Brown owns and occupies a townhouse in Northeast D.C. The townhouse has three bedrooms and a full bathroom on the top floor, a kitchen and living room on the ground floor, and a basement. Since 2008, Brown has rented one of her bedrooms—right next to her own, on the top floor—to Yolanda and Whitfield Raines. The Raineses also have use of the house's common areas, including the lone bathroom on the top floor, the kitchen, and the living room. About five years after

the Raineses moved in, Brown's sister moved into the third bedroom on the top floor and Brown's nephew moved into the basement. They both still resided there at the time of this suit.

The Raineses had periodically asked Brown to undertake various repairs to the property during their years residing there. In 2016, apparently dissatisfied with her responses, they requested an inspection by the District's Department of Consumer and Regulatory Affairs and filed a housing-conditions complaint in Superior Court. The parties' relationship soured from there. Several weeks after the Raineses filed their complaint, Brown texted them: "I hope u know that u can not expect to take me to court and stay in my house. U do not hv long to find a place since we go to court [soon]." Brown went on to tell the Raineses, "do what you want to. Call whom ever u want to. While u making all these calls place one to a real estate agent."

Several months later, Brown served the Raineses with a 90-day notice to vacate, citing a desire to regain possession of the unit for her "personal use and occupancy as a dwelling." *See* D.C. Code § 42-3505.01(d). When those 90 days had run, she filed suit to evict them. She was unsuccessful. Before the trial court, the Raineses successfully argued that an eviction within six months of their housing-

conditions complaint triggered a statutory presumption of retaliation, and that Brown had failed to rebut that presumption with the requisite clear and convincing evidence. *See id.* § 42-3505.02(a)-(b). Brown appealed, and we affirmed the trial court's order dismissing her suit on this ground. *Brown v. Raines*, No. 17-CV-1338, Mem. Op. & J. at 5 (D.C. May 29, 2020).

While that appeal was pending, Brown filed a second eviction action, again citing her desire to regain possession of the unit for her personal use as a dwelling.[1] The Raineses renewed their defense that the eviction was retaliatory, and further argued that Brown did not, in fact, intend to immediately personally use or occupy the unit as a dwelling. The Raineses sought summary judgment on that ground, pointing to Brown's inability to articulate precisely what she intended to do with the unit. They highlighted Brown's deposition testimony in which she had stated that her intended use of the unit was to do "whatever I want to do with my room, you know. That's it. Whatever I want to do with it—storage, sleep in it sometimes, telework."

---

[1] Brown also filed a third eviction action alleging non-payment of rent, though that was evidently settled and is not at issue in this appeal.

The trial court granted summary judgment in the Raineses' favor, reasoning that "[t]he operative terms of § 42-3505.01(d) . . . suggest a far more robust use of the premises [as a dwelling] than presently contemplated by Ms. Brown." Accordingly, because Brown did not have "a concrete plan for how she w[ould] use the room," it found that she could not evict her tenants under this statutory provision. Brown unsuccessfully sought reconsideration, and now appeals.

## II.

### A.

A landlord in the District of Columbia generally may not evict a residential tenant, even after the expiration of the tenant's lease, so long as the tenant continues to pay rent and otherwise complies with the terms of the rental agreement. D.C. Code § 42-3505.01(a). Exceptions to this general rule are narrowly drawn and limited to those specifically enumerated by statute. *See id.* § 42-3505.01(b)-(j). Brown's suit relies on the third statutory exception, which permits an owner to recover possession of a unit when they seek "in good faith to recover possession of the rental unit for [their] immediate and personal use and occupancy as a dwelling." *Id.* § 42-3505.01(d).

Congress first enacted the "use as a dwelling" exception to the District's tenant-protection laws as part of the District of Columbia Emergency Rent Act of 1941, Pub. L. No. 77-327, § 5(b)(2), 55 Stat. 788, 791 (1941). As relevant here, that statute provided:

> No action or proceeding to recover possession of housing accommodations shall be maintainable by any landlord against any tenant, notwithstanding that the tenant has no lease or that his lease has expired, so long as the tenant continues to pay the rent to which the landlord is entitled, unless . . . The landlord seeks in good faith to recover possession of the property for his immediate and personal use and occupancy as a dwelling.

*Id.* at 791. Though initially set to expire at the end of 1945, *see United States v. Wittek*, 337 U.S. 346, 347 n.1 (1949), the Emergency Rent Act was repeatedly extended by subsequent Congresses until 1973, when it was finally repealed as part of the District of Columbia Rent Control Act, Pub. L. 93-157, § 9, 87 Stat. 623, 627 (1973). After a two-year hiatus, the D.C. Council re-enacted the provision without material change as part of the Rental Accommodations Act of 1975, D.C. Act 1-33, 22 D.C. Reg. 2425 (1975). The provision has remained unchanged through subsequent statutory enactments, and it is presently codified at D.C. Code § 42-3505.01(d).

This court has never considered the precise meaning of the "use as a dwelling" exception, though our predecessor court interpreted the analogous provision in the Emergency Rent Act in dozens of cases (mostly in the 1940s). *See, e.g.*, *Manogue v. Heilbroner*, 63 A.2d 876, 877-78 (D.C. 1949) (permitting owner of three-story house to evict basement tenant so that in-home nurse could occupy space). While those cases interpreted what is now technically a defunct statutory provision, they are highly persuasive in interpreting the current provision given that (1) the relevant statutory language is the same and (2) we presume that when the Council reenacted the provision in 1975 it was aware of how the District's courts had interpreted the same language in the prior provision. *See Smith v. United States*, 597 A.2d 377, 382 n.11 (D.C. 1991) (noting that the Council is presumed to act with knowledge of existing case law); *cf. Richman Towers Tenants' Ass'n v. Richman Towers LLC*, 17 A.3d 590, 611-12 (D.C. 2011) (construing another housing statute to be consistent with preexisting laws protecting tenants).[2]

---

[2] Beyond this presumption that the Council acts with knowledge of existing case law, we are aware of no relevant legislative history concerning this "use as a dwelling" exception, and the parties have pointed us to none. *See Irene v. Rubio*, No. 13-LTB-32709, 2014 D.C. Super. LEXIS 9, at *21-22 (D.C. Super. Ct. July 8, 2014) (Kravitz, J.) (likewise finding no relevant legislative history on the exception).

With that statutory background in hand, we now turn to applying this provision to the specific facts of this case. While doing so, we are mindful that this provision is "part of a comprehensive legislative scheme to protect the rights of tenants," so it "must be construed liberally." *Adm'r of Veterans Affs. v. Valentine*, 490 A.2d 1165, 1168 (D.C. 1985).

**B.**

"We review grants of summary judgment de novo, undertaking 'an independent review of the record.'" *Redshift, LLC v. Shaw*, 264 A.3d 1182, 1187 (D.C. 2021) (quoting *District of Columbia v. D.C. Pub. Serv. Comm'n*, 963 A.2d 1144, 1155 (D.C. 2009)). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Super. Ct. Civ. R. 56(a)(1). The record, as well as any reasonable inferences therefrom, must be viewed in the light most favorable to the non-moving party (in this case, Brown). *Bailey v. District of Columbia*, 668 A.2d 817, 819 (D.C. 1995).

Brown argues on appeal that the trial court erred in concluding that she could not establish that she intended to use the Raineses' space for her own "immediate and personal use and occupancy as a dwelling" absent a concrete plan for how she would use their bedroom. D.C. Code § 42-3505.01(d). We agree that the trial court

erred in this respect. Recall that in her deposition, Brown did not articulate a particular intended use for the bedroom currently leased by the Raineses. Rather, she testified that "I am just running out of room," and that when she regained possession of the unit, she planned to use it for "[W]hatever I want to do with it—storage, sleep in it sometimes, telework." She added that her sister and nephew had begun residing in the house, further crowding the common areas, in the years since she began renting to the Raineses.

The trial court found this explanation legally insufficient, stating that Brown's testimony "show[s] that she does not have a concrete plan for how she will use the room." But we see no basis for concluding that the "use as a dwelling" exception requires such a concrete plan in the context of this case, particularly in light of common areas that Brown shares with the Raineses. Brown already occupies the house as a dwelling, and her testimony—which we must accept as true in this posture—explained that she wants to expand her living space. Not every corner of somebody's dwelling needs to be designated for a particular use. Dwellings may have all-purpose rooms, guest rooms, and spare rooms that are earmarked for no specific purpose. Brown's inability to articulate a particular use for the Raineses' room, and her stated desire to use it however she sees fit, does not foreclose the possibility that she genuinely would like to annex it as part of her dwelling.

The Raineses point to several cases construing the now-superseded Emergency Rent Act, but none supports the trial court's reasoning that Brown needed a concrete plan for how she intended to use the Raineses' room. First, they cite to *Brauer v. O'Daniel*, 47 A.2d 89 (D.C. 1946), for the proposition that a property owner must show "a real immediate need for his own property" to evict a tenant under this exception. *Id.* at 91. *Brauer* involved a successful attempt by then-U.S. Senator Lee O'Daniel to oust the tenants of a 14-unit apartment building so that he could combine the units together as a single townhouse, for his own use. *Id.* at 89-90. Our predecessor court held that this fell within the "use as a dwelling" exception to the statute, explaining that "the section does not ignore the rights of an owner who brings himself within the provisions of the section and shows a real immediate need for his own property." *Id.* at 91. Far from supporting the trial court's reasoning, *Brauer* seems to support Brown's position, as it appears that Senator O'Daniel never specified what particular use he would make of any given room—only that he "inten[ded] to occupy the building as a home." *Id.* at 90. It thus appears that Senator O'Daniel would not have satisfied the trial court's test of needing a concrete plan for how he intended to use each unit, placing the trial court's reasoning at odds with *Brauer*.

Next, the Raineses point to a handful of cases that they say stand for the proposition that a landlord-owner must show "a change of circumstances creating an immediate need to personally use and occupy the property as a dwelling." *See Staves v. Johnson*, 44 A.2d 870 (D.C. 1945); *Manogue*, 63 A.2d at 876; *Gould*, 31 A.2d at 867; *Dant v. Forsythe*, 81 A.2d 84 (D.C. 1951). It is true that in those cases, a specific event triggered the landlord's desire to evict his tenants—for instance, in *Manogue*, the landlord's health had deteriorated so that she required dwelling space for a live-in nurse, 63 A.2d at 876-77, and in *Dant* the landlords had sold their residence, prompting their desire to move back into the four-unit apartment building that they owned, 81 A.2d at 84-85. But none of those cases suggested that a change in circumstances was a required showing, and other cases clearly demonstrate that it is not. In *Brauer*, for example, Senator O'Daniel sought to oust his tenants because he felt that his current housing was "inconvenien[t]" due to its "insufficient living and working space." 47 A.2d at 89. The court held that this explanation, which closely mirrors Brown's general desire for more living space, fell within the "use as a dwelling" exception. *Id.* at 91. The same is true here.

Finally, the Raineses argue that we must interpret the "use as a dwelling" exception in light of the Council's clear goal of "protect[ing] the stability of low- and moderate-income tenants." We agree that the Council—like Congress before

it—acted with the goal of protecting the rights of tenants and that "the spirit as well as the letter of the Act should be considered." *Gould*, 31 A.2d at 869. But we also agree with our predecessor court that the best way to accomplish this goal is by closely scrutinizing a landlord's good faith to ensure that "pretext and flimsy showings [do] not form the basis for ousting tenants." *Id.* As that court explained:

> [I]n examining the question of good faith all circumstances should be considered which will shed light upon whether a proper case for possession has been established. Among these circumstances, is, we think, the state of mind, intent and purpose of the suing landlord as reflected in the evidence. For all of these elements are bound up with the question of good faith, and may help the court decide whether the landlord is merely attempting to juggle his property for profit, or legitimately requires it to live in.

*Id.*; *see also Staves*, 44 A.2d at 871 ("Even though the landlord intends to actually occupy the premises it cannot be said that he acts in good faith if his dominant purpose is to evict the tenant.").

The critical question is thus not whether Brown has the Raineses' room earmarked for a particular purpose, but whether she is acting in good faith when she claims a desire to incorporate their room into her own dwelling. To be sure, Brown's seeming inability to articulate what she wants to do with the room may factor into that good-faith analysis, but by itself it is not fatal to her eviction claim. We

therefore vacate the trial court's order and remand for it to consider whether the evidence adduced during discovery shows a real dispute of material fact as to whether Brown's attempt to evict the Raineses was undertaken with a good faith intent to use their unit as part of her personal dwelling.[3]

### III.

The Superior Court's judgment is vacated and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

[3] Brown also argues that the court disregarded disputes of material fact when granting summary judgment to the Raineses.  Because we reverse the trial court's grant of summary judgment, we do not reach that issue.